JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./ State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:   (510) 839-3882

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.P., a minor, by and through her guardian ad litem, ANDREA CASTILLO; J.P., a minor, by and through his guardian ad litem, ANDREA CASTILLO; JOSE PEREZ, Sr., individually and as personal representative of the Estate of Jose Perez, Jr.; GRACIELA PEREZ, individually and as personal representative of the Estate of Jose Perez, Jr., | Case No.  CV 06-06009 CRB<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS. JURY TRIAL DEMANDED** |

      Plaintiffs,

      vs.

CITY OF SAN LEANDRO,  a municipal corporation; JOSEPH KITCHEN, in his official capacity as Chief of Police for the CITY OF SAN LEANDRO; N. CORTI, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO; T. DEGRANO, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO;  J. MOLETTIERI, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO; R. MCMANUS, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO; T. OVERTON, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO; R. THOMPSON, individually and in his official capacity as a police officer for the CITY OF SAN LEANDRO;  F. GROVE, individually and in his official capacity as a police officer for the
(caption continues on following page)

CITY OF SAN LEANDRO; J. TEIXEIRA,
individually and in his official capacity as a
police officer for the CITY OF SAN
LEANDRO; M. NEMETH, individually and in
his capacity as a police officer for the CITY OF
SAN LEANDRO; M. MAREZ, individually and
in his capacity as a police officer for the CITY
OF SAN LEANDRO; DOES 1-25, inclusive,
individually and in their capacities as police
officers for the CITY OF SAN LEANDRO,

                    Defendants.
                                                    /
_____

## JURISDICTION

1.      This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343.  The unlawful acts and practices alleged herein occurred in the County of San Mateo, California, which is within this judicial district.

## PARTIES

2.      Plaintiff T.P. ("T.P.") is the minor daughter of decedent Jose Perez, Jr., represented in this action by and through her mother and guardian ad litem ANDREA CASTILLO, and she is a resident of the County of Alameda, California.

3.      Plaintiff J.P. ("J.P.") is the minor son of decedent Jose Perez, Jr., represented in this action by and through her mother and guardian ad litem ANDREA CASTILLO, and he is a resident of the County of Alameda, California.

4.      Plaintiff JOSE PEREZ, Sr. ("PEREZ, Sr.") is a competent adult and is the father of decedent Jose Perez, Jr., and he is a resident of the County of Alameda.  Plaintiff PEREZ, Sr. is the joint personal representative of the Estate of Jose Perez, Jr.

5.       Plaintiff GRACIELA PEREZ ("PEREZ") is a competent adult and is the mother of decedent Jose Perez, Jr, and she is a resident of Alameda County.  Plaintiff PEREZ is the joint personal representative of the Estate of Jose Perez, Jr.

6.      Defendant CITY OF SAN LEANDRO ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California.  The City operates under its authority the San Leandro Police Department.

7.      At all times mentioned herein, Defendant JOSEPH KITCHEN ("KITCHEN") was employed by defendant CITY as Chief of Police for the CITY.  He is being sued in his official capacity as Chief of Police for the CITY.

8.      At all times mentioned herein, Defendant N. CORTI ("CORTI") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

9.      At all times mentioned herein, Defendant T. DEGRANO ("DEGRANO") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

10.      At all times mentioned herein, Defendant J. MOLETTIERI ("MOLETTIERI") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

11.      At all times mentioned herein, Defendant R. MCMANUS ("MCMANUS") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

12.      At all times mentioned herein, Defendant T. OVERTON ("OVERTON") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

13.      At all times mentioned herein, Defendant R. THOMPSON ("THOMPSON") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

14.      At all times mentioned herein, Defendant F. GROVE ("GROVE") was employed by defendant CITY as a police officer for the CITY.  He is being sued individually and in his official capacity as a police officer for the CITY.

15. At all times mentioned herein, Defendant J. TEIXEIRA ("TEIXEIRA") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

16. At all times mentioned herein, Defendant M. NEMETH ("NEMETH") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

17. At all times mentioned herein, Defendant M. MAREZ ("MAREZ") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

18. At all times mentioned herein, defendant officers DOES 1-25, inclusive, were employed by defendant CITY as a police officers. They are being sued individually and in their capacities as police officers for the CITY.

19. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1 through 25, inclusive, when they have been ascertained.

20. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

21. For state causes of action, Plaintiffs are required to comply with a statutory claim filing requirement. Plaintiffs have complied with all statutory filing requirements related to their Federal claims.

STATEMENT OF FACTS

22. On October 20, 2005, decedent JOSE PEREZ visited his youngest daughter, minor plaintiff T.P., at Children's Hospital in Oakland. Minor plaintiff T.P. had been hospitalized with the

flu and diabetic complications since the preceding October 17th.  Decedent PEREZ and his

daughter's mother, Andrea Castillo, with whom decedent PEREZ had an on-and-off relationship,

spent substantial amounts of time at Children's Hospital during the period of minor plaintiff T.P.'s

hospitalization.  Ms. Castillo is also the mother of decedent's son, minor plaintiff J.P.

23.     Decedent possessed Ms. Castillo's house-keys when he left Children's hospital on the

afternoon of October 20, 2005. After he went to Ms. Castillo's home, an apartment located at 540

Callan Avenue, Ms. Castillo's daughter, who is unrelated to decedent, called the police, ostensibly

because decedent violated a court order by coming to Ms. Castillo's home.  Ms. Castillo's daughter

purportedly told 911 dispatchers that decedent was acting bizarre and that he was talking to himself,

but that decedent had not hurt anyone.  Defendant Officers DEGRANO and CORTI responded to the

call and arrived at the Callan Avenue residence. At the time of this incident, Defendant Officer

CORTI was in Field Training. Defendant Officer DEGRANO was Defendant Officer CORTI's Field

Training Officer ("FTO").  Defendant Officer MOLETTIERI arrived at the Callan Avenue residence

as a cover unit at about the same time as Defendant Officers CORTI and DEGRANO.  Plaintiffs

allege that these Defendant Officers responded to investigate a potential violation of a restraining

order prohibiting decedent from harassing Ms. Castillo and her daughter who was unrelated to

decedent, as noted herein-above.

24.     Decedent answered the door after Defendant Officers knocked.  Decedent lucidly and

correctly answered after Defendant Officers asked him his name.  Decedent complied with Defendant

Officers orders to step out of the apartment.  Defendant Officers contend that decedent refused their

orders for him to sit down after he stepped out of the apartment, and claim that he began to walk

away from them. In apparent response to decedent allegedly walking away from the officers,

Defendant Officer DEGRANO unholstered his Taser X-26 stun-gun.  According to Defendant

Officers, decedent fled from them after DEGRANO removed his Taser and ordered decedent "to his

knees."

25.     Decedent fled into a nearby Alameda County Fire Station, which had its overhead

doors open and where several firefighters were present. Defendant Officers DEGRANO tackled

decedent to the ground and applied a figure four leg-lock while Defendant Officer CORTI applied a

wrist lock to decedent.  According to defendants, Defendant Officer CORTI also held his 26" asp in one hand as he applied the wrist lock to decedent. Defendants contend that decedent grabbed hold of Defendant Officer CORTI's asp, and Defendant Officer DEGRANO removed the air-cartridge from his Taser X-26 and applied the Taser in drive-stun mode to decedent's right hip, which required placing the Taser stun-gun directly against decedent's right hip.  Plaintiffs contend that the Taser operates by sending an electrical charge through the body that overrides nerve impulses and causes involuntary muscle contraction.  Nevertheless, Defendant Officers claimed in their police report that the Taser had "no effect" on decedent, who allegedly continued to struggle for Defendant Officer CORTI's asp.  Defendant Officer DEGRANO then drive stunned decedent several more times in the abdomen.  Defendant Officers claimed in their police report that none of these Taser applications had any effect upon decedent.  Defendants Officer CORTI then used his elbow to strike decedent several times in the head.  Defendants contend in their police report that throughout this use of force and electrical shock, decedent retained his grip on CORTI's asp.

26.    According to Defendant Officers' police report, Defendant Officer MOLETTIERI arrived on the scene and was able to push decedent onto his side, which purportedly allowed Defendant Officer CORTI to regain control of his asp.  Defendant Officers contend that decedent then attempted to stand, and Defendant Officer DEGRANO applied a downward elbow strike to decedent's right shoulder and forced him back down to the ground.  The officers claim in their police report that decedent twisted into a seated position and began kicking at the officers.  Defendant Officer DEGRANO admits that he struck decedent in the chest with a right-hand palm strike, and then applied a carotid restraint to decedent.  It should be noted that decedent suffered fractured and bruised thyroid cartilage, likely the result of an improperly applied carotid restraint.

27.    A paramedic who was present at the firehouse witnessed one of the officers apply a "chokehold", consisting of a looped arm around decedent's neck.  The paramedic observed decedent's limbs begin to turn blue in the fingertips ("cyanotic"), saw that decedent was not breathing very well, and walked over to observe decedent to ascertain whether decedent was still breathing or even alive.  The paramedic told the officers present that decedent was "turning black and blue. He's not breathing. You need to stop."  Defendant Officer DEGRANO then released the carotid

hold and decedent made choking noises that indicated he was getting his air back. The paramedic observed that the "chokehold" was applied to decedent for about 30 seconds.  According to the paramedic, decedent asked the officers, "Why are you guys arresting me?" The firefighter observed that decedent at this point looked normal.  The paramedic did not want further involvement in the incident and he exited to a different room at the firehouse.  Although he was no longer in the same room as decedent, the paramedic heard further sounds of tussling and heard decedent continuing to speak.

28.     After Defendant Officer DEGRANO released the carotid restraint, which he told investigators was only applied for about 3 to 5 seconds, he grabbed one of decedent's arms and Defendant Officer CORTI struck decedent in the back two times with a closed fist, according to the officers.  The officers then handcuffed decedent and used their radios to inform dispatch that they had decedent in custody.

29.     According to Defendants' police report, decedent continued to fight while in a seated position after he was handcuffed, so Defendant Officers CORTI and DEGRANO held him down. Defendant Officer MCMANUS, a sergeant, arrived at the scene and allegedly helped to control decedent by standing on one ankle while Defendant Officer CORTI stood on the other ankle. At this time, Defendant Officer MCMANUS took the opportunity to observe decedent's eyes, and determined that decedent was under the influence of a controlled substance. The officers then held decedent down on his back.

30.     Defendant Officer OVERTON, a lieutenant, arrived at the scene and also noticed symptoms consistent with decedent being under the influence of a controlled substance.   Defendants allege that decedent kicked Defendant Officer OVERTON. Defendant Officer DEGRANO then tased decedent again approximately three more times on the right lower torso.  Defendant Officer CORTI retrieved a wrap restraint from Defendant Officer MCMANUS's police vehicle, and Defendant Officers CORTI, MAREZ, and OVERTON placed the wrap on decedent's legs, restricting decedent's movements. Defendant Officers then placed decedent in Defendant Officer MAREZ's police vehicle after tasing decedent again after he allegedly stiffened his body to resist being placed in the police vehicle.  Decedent spoke continuously, repeatedly cursing and demanding to be let out of the car,

while he was in the back of the police vehicle which transported decedent to San Leandro Police City Jail.

31.     Defendant Officer MCMANUS called ahead and asked that the jailers prepare cell number 1, and also asked that jailers be prepared outside the jail to assist in handling decedent. Defendant Officers GROVE, TEIXEIRA, and THOMPSON, who are jailers at the San Leandro Police City Jail, and Defendant Officer NEMETH were outside the jail to assist Defendant Officers who were transporting decedent. According to the officers' police report, decedent refused to exit the police vehicle when it arrived at the jail, Defendant Officers GROVE, TEIXEIRA, THOMPSON and CORTI removed decedent from the police vehicle.

32.     The officers escorted decedent into the jail and the jailors attempted to remove his property.  Decedent did not cooperate with the officers, and Defendant Officer DEGRANO pushed him against a plexi-glass window while Defendant Officer THOMPSON removed an earring from decedent's ear.  The officers then transported decedent to cell number 1, where decedent was placed on his stomach.  Decedent remained handcuffed and in the wrap restraint device.  Defendant Officer TEIXEIRA removed decedent's shoes and socks and then began to remove the wrap restraint device. Defendant Officers NEMETH and THOMPSON held decedent's legs while Defendant Officer TEIXEIRA removed the wrap restraint device.  Defendant Officer NEMETH tased decedent again in his exposed lower back as he controlled one leg.  Again, Defendants contend in their police report that the taser had no effect on decedent.

33.     Defendant Officer MCMANUS then tased decedent three more times in the back. Defendants contend that MCMANUS warned decedent each time before applying the taser. Defendant Officer DEGRANO used a cutting device to cut decedent's belt to remove decedent's pants.  Defendants contend in their police report that decedent, who was handcuffed, grabbed Defendant Officer MCMANUS's taser, which allegedly caused Defendant Officer DEGRANO to taser decedent two more times, allegedly in the palm of one of decedent's hands. It is unclear, since decedent was handcuffed and allegedly had hold of Defendant Officer DEGRANO's taser, how Defendant Officer MCMANUS was able to taser decedent in the palm of either hand.  According to the officers' police report, decedent suddenly went limp.  Defendant Officers believed this was a ploy

by decedent, but decedent failed to react to the officers attempt to elicit a physical reaction. Defendant Officer's could not locate any pulse on decedent and decedent was not breathing.

34.    Defendant Officers' MCMANUS's and THOMPSON's CPR attempts did not revive decedent, who was transported by AMR paramedics to Mt. Eden hospital, where he was pronounced dead at 1938 hours.

35.    An autopsy performed by the Alameda County Sheriff's Office Coroner Bureau noted the numerous blunt injuries and marks consistent with taser application to decedent's body, as well as a fracture of the right superior horn of the thyroid cartilage. In spite of evidence of 21 taser applications to decedent, the body weight of some defendant officers applied to decedent's torso, and a fracture to decedent's neck cartilage, the Alameda County Sheriff's Office Coroner determined that decedent died as a result of "methamphetamine intoxication associated with physical exertion."

36.    Plaintiffs allege that, according to a training bulletin issued by the Taser manufacturer in 2005: "Repeated, prolonged, and/or continuous exposure(s) to the TASER electrical discharge may impair breathing and respiration, particularly when the probes are placed across the chest or diaphragm. Users should avoid prolonged, extended, uninterrupted discharges or extensive multiple discharges whenever practicable in order to minimize the potential for over-exertion or potential impairment of the ability to breathe over a protracted time period. Particularly when dealing with persons showing symptoms of excited delirium, use of the TASER devise should be combined with physical restraint techniques to minimize the total duration of the struggle and minimize the total duration of TASER devise stimulation. Excited delirium is a potentially fatal condition caused by a complex set of physiological conditions including over-exertion of the subject and inability for sufficient respiration to maintain normal blood chemistry. These subjects are at a significant and potentially fatal health risks from further prolonged exertion and/or impairment of breathing." (On page 2, item 8 of the training bulletin).

37.    Plaintiffs allege that Defendant Officers failed to use the Taser stun gun in conformance with the guidelines issued by the Taser manufacturer. Defendant Officers used the Taser in an excessive manner, and used other forms of unreasonable force against decedent, as detailed herein, that resulted in a fracture of decedent's neck and restricted decedent's ability to

breathe, thereby causing his death by asphyxiation.  As shown by the autopsy report, decedent was in good physical health at the time of his death.

38.    Plaintiffs allege that decedent Jose Perez, Jr.'s death was the result of excessive and brutal force used against him by defendant officers.

39.    Plaintiffs further allege that decedent's death was the proximate result of Defendant CITY's failure to reasonably train their police officers in the proper and reasonable use of force and the proper and reasonable use of taser stun-guns.  Plaintiffs further allege that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and  the failure to reasonably train police officers employed by Defendant CITY in the use of Taser stun-guns.

40.    The killing of decedent Jose Perez, Jr. described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiffs' injuries and resulting damages.

DAMAGES

41.    Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of decedent Jose Perez, Jr.'s wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses.

42.    Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).  Additionally, Plaintiffs are entitled to the reasonable value of funeral and burial expenses pursuant to C.C.P. Sections 377.60 and 377.61.

43.    Pursuant to C.C.P. Sections 377.30, 377.32, and 377.34, plaintiffs are further entitled to recover for damages incurred by decedent before he died as the result of being assaulted and battered, for deprivation without due process of decedent's right to life, and to any penalties or punitive damages to which decedent would have been entitled to recover, had he lived.  These damages do not include damages incurred by decedent consisting of pain, suffering, and disfigurement prior to decedent's death.

44.     As a further direct and proximate result of the negligence, excessive force and deliberate indifference of defendants, and each of them, Plaintiffs have been deprived of decedent's financial support.

45.     The conduct of the defendant officers was malicious, wanton, and oppressive. Plaintiffs, as decedent's successors in interest, are therefore entitled to an award of punitive damages against said individual defendants.

46.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law.  Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

FIRST CAUSE OF ACTION
(Wrongful Death 42 U.S.C. Section 1983)

47.     Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 46 of this Complaint.

48.     Defendants acted under color of law by killing decedent without lawful justification and subjecting decedent to excessive force thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

a.     The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.     The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c.     The right to be free from the use of excessive force by police officers, which is guaranteed  by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d.     The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution;  and/or,

e.     The right to be free from interference within the zone of privacy, as protected by the

Fourth and Ninth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(Violations of Plaintiffs' civil rights to familial relationship - 42 U.S.C. section 1983)

49.     Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through

48 of this Complaint.

50.     Defendants, acting under color of state law, and without due process of law deprived

Plaintiffs of their right to a familial relationship by seizing decedent by use of unreasonable,

unjustified and deadly force and violence, causing injuries which resulted in decedent's death, all

without provocation and did attempt to conceal their excessive use of force and hide the true cause of

decedent's demise to deprive Plaintiffs of their right to seek redress, all in violation of rights,

privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United

States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(*Monell* - 42 U.S.C. section 1983)

51.     Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through

50 of this Complaint.

52.     Plaintiffs are informed and believe and thereon allege that high ranking CITY OF

SAN LEANDRO officials, including high ranking police supervisors such as Defendant KITCHEN,

DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about the

proper and reasonable use of force and the proper and reasonable use of the Taser stun gun, that misuse or abuse of the Taser stun gun can cause death, and the potential danger for misuse or abuse of the use of force and of the Taser stun gun by Defendant Officers DEGRANO, MCMANUS, NEMETH and DOES 1-10, and/or each of them.

53.    Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants KITCHEN, DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized, the misuse or abuse of the use of force, the Taser stun gun, and/or civil rights violations by said officers.

54.    Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the potential for the Taser stun gun to be misused and/or abused, to potentially cause death, and use of excessive force by  Defendants DEGRANO, MCMANUS, NEMETH and DOES 1-10, and/or each of them, Defendant KITCHEN, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct, misuse and abuse of the Taser stun-gun, and caused these officers' lack of training, resulting in the violation of the Plaintiffs' rights as alleged herein.

55.    The aforementioned acts and/or omissions and/or deliberate indifference by high ranking CITY AND SAN LEANDRO  officials, including high ranking CITY OF SAN LEADNRO Police Department supervisors, Defendants KITCHEN, DOES 11-25, and each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

56.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Survival action:  Violation of decedent's civil rights
42 U.S.C. section 1983)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

57.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 56 of this Complaint.

58.     The foregoing claim for relief arose in decedent's favor, and decedent would have been the Plaintiff with respect to this claim if he had lived.

59.     Defendants acted under color of law in  killing decedent without lawful justification and subjecting decedent to excessive force, thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

COMPLAINT FOR DAMAGES                                                                                          14

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution;  and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

60. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
(C.C.P. Section 377.60 and 377.61)
Wrongful Death- Negligence
(Plaintiffs T.P. and J.P. by and through their Guardian Ad Litem, ANDREA CASTILLO)

61. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 60 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

62. Defendant CITY, by and through its agents and employees, Defendant Officers CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, inclusive, negligent actions and/or negligent failure to act, as set forth herein-above proximately caused the death of decedent JOSE PEREZ, Jr., on October 20, 2005.

63.     As an actual and proximate result of said defendants' negligence, and the death of

decedent, plaintiffs have sustained pecuniary loss resulting from the loss of comfort, society,

attention, services, and support of their father, decedent, in an amount according to proof at trial.

64.     As a further actual and proximate result of said defendants' negligence, plaintiffs have

incurred funeral and burial expenses, in an amount according to proof at trial.

65.     Pursuant to California C.C.P. Sections 377.60 and 377.61, plaintiff has brought this

action, and claims damages from said defendants for the wrongful death of decedent, and the

resulting injuries and damages.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Violation of Civil Code Section 51.7)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

66.  Plaintiffs reallege and incorporate by reference  herein paragraphs 1 through 65 of this

complaint.

67.  Plaintiffs are informed and believe and thereon allege that the conduct of defendants

CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA,

THOMPSON, NEMETH, and DOES 1-10, inclusive, as described herein, was motivated by racial

prejudice against plaintiffs' decedent.  Plaintiffs' decedent is and was readily recognizable as

Hispanic-American.  In engaging in such conduct, defendants violated plaintiffs' decedent's rights

under California Civil Code Section 51.7 to be free from violence, or intimidation by threat of

violence committed against him because of his race.

68.  Under the provisions of California Civil Code Section 52(b), defendants are liable an

additional $25,000.00 for each violation of Civil Code Section 51.7 for punitive damages and for

reasonable attorney's fees.

69.     As a proximate result of defendants' wrongful conduct, plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

SEVENTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

70.  Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 69 of this Complaint.

71.  The conduct of Defendants CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that through the wrongful assault and battery and killing of plaintiffs' decedent they interfered with plaintiffs' decedent's exercise and enjoyment of his civil rights.

72.  As a direct and proximate result of defendants' violation of Civil Code Section 52.1, decedent suffered violation of his constitutional rights, and suffered damages as set forth herein.

73.  Since this conduct occurred in the course and scope of their employment, defendant CITY is therefore liable to plaintiffs pursuant to respondeat superior.

74.  Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, plaintiffs pray for relief, as hereinafter set forth.

EIGHTH CAUSE OF ACTION
(Assault and Battery)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

75.  Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 74 of this Complaint.

76.  Defendants CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, inclusive, placed plaintiffs' decedent in immediate fear of death  and severe bodily harm by attacking and battering him without any just provocation or cause.

77.  These defendants' conduct was neither privileged nor justified under statute or common law.

NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

78.  Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 77 of this Complaint.

79.  The conduct of defendants CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, inclusive, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.  Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon plaintiffs' decedent.

80.  As a proximate result of defendants' willful, intentional and malicious conduct, plaintiffs' decedent suffered severe and extreme mental and emotional distress.  Therefore, plaintiffs are entitled to an award of punitive damages as against said defendants.  Plaintiffs have suffered damages as hereinafter set forth.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
(Plaintiffs PEREZ, Sr. and PEREZ as joint personal representatives of decedent)

81.  Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 80 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

82.  The wrongful conduct of Defendants CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, inclusive, as set forth herein, constitutes negligent conduct done with conscious disregard for the rights of plaintiffs.

83.  As a proximate result of defendants' negligent conduct, plaintiffs have suffered severe emotional and mental distress, having a traumatic effect on plaintiffs' emotional tranquility.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.


ELEVENTH CAUSE OF ACTION
(Negligent Hiring, Retention, Training, Supervision, and Discipline)

84.  Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 83 of this Complaint, except for any and all allegations of intentional , malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

85.  At all times herein mentioned, defendant CITY, by and through its supervisory employees and agents, KITCHEN, and DOES 11-25, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officers so as to avoid unreasonable risk of harm to citizens.  With deliberate indifference, CITY, KITCHEN, and DOES 11-25, inclusive, failed to take necessary, proper, or adequate measures in order to prevent the violation of plaintiff's rights and injury to said plaintiff.  CITY, KITCHEN, and DOES 11-25,

inclusive, breached their duty of care to citizens in that CITY, KITCHEN, and DOES 11-25, inclusive, failed to adequately train its police officers, including Defendants CORTI, DEGRANO, MOLETTIERI, MCMANUS, OVERTON, MAREZ, GROVE, TEIXEIRA, THOMPSON, NEMETH, and DOES 1-10, in the proper and reasonable use of force, the proper and reasonable use of the Taser stun gun, the proper and reasonable making of arrests, and treating citizens in a manner that is not racially discriminatory, and/or failed to have adequate policies and procedures regarding the proper and reasonable use of force, the proper and reasonable use of the Taser stun gun, the proper and reasonable making of arrests, and treating citizens in a manner that is not racially discriminatory.  This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing use of excessive and unreasonable force by police officers employed by CITY, the continuing failure to properly and reasonably use the Taser stun gun,  the continuing failure to make proper and reasonable arrests by police officers employed by CITY, and continuing racially discriminatory behavior towards citizens by police officers employed by the CITY.

86.  As a proximate result of defendants CITY, KITCHEN, and DOES 11-25, inclusive's negligent conduct, plaintiffs suffered the wrongful death of their respective son and father, Jose Perez, Jr.,  severe emotional and mental distress, and injury having a traumatic effect on Plaintiffs' emotional tranquility, and they suffered damages.


WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

JURY DEMAND

87    Plaintiffs hereby demand a jury trial in this action.

PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.    For general damages in a sum of $10,000,000.00;

2.    For special damages in a sum according to proof;

3.    For punitive damages in a sum according to proof;

4.    For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.    For injunctive relief enjoining Defendant CITY OF SAN LEANDRO from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant CITY from using excessive and unreasonable force against persons, including misuse and abuse of the Taser stun-gun, pursuant to California Civil Code Section 52.1;

6.    For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

7.    For violation of California Civil Code Section 51.7 pursuant to California Civil Code Section 52(b), punitive damages against Defendant police officers, $25,000.00 for each offense and reasonable attorney's fees;

8.    For injunctive relief;

9.    For cost of suit herein incurred; and

10.    For such other and further relief as the Court deems just and proper.


Dated:  September 25, 2006                    **The Law Offices of John L. Burris**


                                      __/s/ John L.  Burris_____
                                      John L. Burris
                                      Attorney for Plaintiff

COMPLAINT FOR DAMAGES                                                  21